## GUITRON v. OREGON SHORT LINE R. CO.

No. 3962.   Decided July 30, 1923.   (217 Pac. 971.)

1.  MASTER AND SERVANT—EVIDENCE HELD INSUFFICIENT FOR SUBMISSION TO JURY AS SHOWING NEGLIGENCE IN REQUIRING SECTION HAND TO WORK IN UNSAFE PLACE.  In a section hand's action for injuries to his eye struck by chip of steel from the chisel or rail being cut by chisel, evidence that he was ordered to hold the rail steady and to stand four or five feet from the workmen doing the hammering *held* insufficient for submission to jury as proof that the railroad was negligent in requiring plaintiff to perform his work in an unsafe place.

2.  MASTER AND SERVANT—REASONABLE CARE REQUIRED IN FURNISHING SIMPLE TOOL.  It is the duty of the employer to be reasonably prudent and careful in selecting and furnishing tools that are reasonably safe and suitable for the work to be done, though the tools are what are known as simple tools.[1]

3.  MASTER AND SERVANT—RISKS ASSUMED BY EMPLOYEE.  An employee assumes the risks ordinarily incident to the employment, but not the risks due to the negligence of the employer, unless the employee has knowledge of the defect and is aware

---

[1] *Russell* v. *Borden's Condensed Milk Co.*, 53 Utah, 457, 174 Pac. 633.

of and appreciates the danger arising from it, or unless the defect and danger are so open and obvious that an ordinarily prudent person would have observed and appreciated them.[2]

4.  COURTS—RIGHTS AND LIABILITIES OF PARTIES UNDER FEDERAL EMPLOYERS' LIABILITY ACT GOVERNED BY DECISIONS OF FEDERAL COURTS. In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), the rights and liabilities of the parties are governed by decision of the federal courts.

5.  MASTER AND SERVANT—SECTION HAND HELD TO HAVE ASSUMED RISK INCIDENT TO USE OF DEFECTIVE CHISEL IN CUTTING RAIL. A section hand could not recover damages under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665) for injuries to his eye struck by steel chip from chisel used in cutting a rail, where he knew that the chisel was worn and defective and realized the danger incident to its use, but continued to work without objection, since he assumed the risk.

Appeal from District Court, Third District, Salt Lake County; *A. R. Barnes,* Judge.

Suit by Crescanciano Guitron against the Oregon Short Line Railroad Company, a corporation. Judgment for plaintiff, and defendant appeals.

REVERSED, and new trial granted.

*Geo. H. Smith, R. B. Porter,* and *J. V. Lyle,* all of Salt Lake City, for appellant.

*Hancock & Barnes,* of Salt Lake City, for respondent.

WEBER, C. J.

As an employee of defendant, plaintiff sued for damages he sustained by the loss of the sight of his left eye; the injury

---

[2] *Bussee* v. *Murray M. & L. S. Co.,* 45 Utah, 596, 147 Pac. 626; *Lukich* v. *Utah Const. Co.,* 48 Utah, 452, 160 Pac. 270; *Toone* v. *O'Neill,* 40 Utah, 285, 121 Pac. 10; *Kuchenmeister* v. *Railroad,* 52 Utah, 126, 172 Pac. 725; *Golesh* v. *Utah Apex Mining Co.,* 49 Utah, 232, 162 Pac. 369; *Shepard* v. *Payne,* 60 Utah, 140, 206 Pac. 1098.

being due to defendant's alleged negligence. From the judgment in favor of plaintiff this appeal is taken.

It is alleged in the complaint that the defendant is a common carrier in the transportation of freight and passengers from one state to another for hire, and that plaintiff was injured while working on the main track of defendant which was used in the transportation of interstate commerce; that on December 10, 1920, plaintiff was employed by defendant as a section hand, and that day worked at Minidoka, Idaho. It is averred in the complaint that among the duties of plaintiff was that of assisting in the cutting of rails under the direction of a section foreman; that on December 10, 1920, a Japanese foreman ordered plaintiff together with other section hands to engage in cutting a rail in two, said rail being a portion of the main track; that the section foreman instructed plaintiff and other men with whom he was working to take turns in hammering a certain chisel held by another workman against the rail, and that when one particular workman had taken his turn at hammering he was to sit near at hand and wait his next turn; that complying with the instructions of the section foreman, the plaintiff assisted in the hammering of said chisel. Plaintiff had finished his turn and in accordance with the instructions of the foreman had taken a position near by, and at the time of the accident was sitting near the chisel waiting the further progress of the work. While plaintiff was thus sitting near said chisel, in compliance with the instructions of the foreman, a blow was given to the chisel by another workman with a hammer, and the chisel being of too hard a texture, or the rail being too hard, a chip of steel flew from either the chisel or the rail directly into the left eye of plaintiff, destroying its sight and so injuring it that the eye had to be removed. The complaint sets out in detail the different particulars in which it is claimed the defendant was negligent.

To these alleged acts of negligence as set forth in the complaint we shall refer hereinafter.

Admitting its corporate capacity, and that it is a common carrier of passengers and freight in the states of Utah, Idaho, and Montana, and that plaintiff was in its employ as a sec-

tion laborer, the defendant denies all the other allegations of the complaint and pleads affirmatively: (1) Contributory negligence; (2) assumption of risk; (3) that prior to the commencement of this action plaintiff, in consideration of $200 paid to him by the defendant, made, executed, and delivered to defendant a written release and discharged it from all claims of plaintiff against the defendant set forth in the complaint.

In reply, plaintiff alleged that he was a Mexican, unable to speak or understand English, and that he did not understand that he was signing a release, and it was not explained to him, and he at no time understood its import, and if the paper he signed was in fact a release of his said claim it was obtained by defendant fraudulently. The greater portion of the trial was devoted to the last defense.

In the argument before this court it is claimed that respondent executed the release and that no evidence was offered tending to avoid or vitiate it.

Respondent is a Mexican. He testified through an interpreter and had no knowledge of English. On the witness stand he claimed that the release was never interpreted to him; that he did not comprehend its terms nor assent to them. It is not necessary to go into details of his testimony nor to review appellant's evidence on that subject. Under all the circumstances and the facts as they appear in the record, the issue relating to the validity of the release was a question of fact for determination by the jury.

The grounds of negligence alleged by plaintiff in his complaint were as follows:

"1. In furnishing plaintiff and the other workmen with a chisel of too hard a composition for safe usage, which fact was unknown to plaintiff."

The record contains not even a scintilla of evidence in support of this claim.

"2. In failing to inspect or cause to have inspected said chisel when defendant knew or by the exercise of reasonable care could have known that said chisel was of too hard a texture and dangerous for use."

The record is wholly devoid of any testimony regarding the

texture of the chisel, and the second ground of negligence is therefore without support in the record.

"3. In requiring, directing, and ordering said plaintiff to perform his work in an unsafe place, to wit, in a place a few feet from said hammering, whereas defendant knew or could have known by the exercise of reasonable care that the order so given was a negligent one under the circumstances and liable to result in injury to either plaintiff or some of the other workmen sitting close by."

As to this ground of negligence, the only evidence is found in the testimony of plaintiff in which he said:

"The boss told me take my position on top of the rail, holding it steady in order that it should not break too soon leaving a rough edge. * * * 'I did what he told me to do, and standing on the rail somewhat directing the work of the young man who had hold of the hammer and was hammering, and observing what he was doing, and a piece of something hit me in the head."

Plaintiff was standing some four or five feet from the workman who was doing the hammering. This is all the evidence the record contains in support of the third proposition.

"4. In requiring plaintiff and the other workmen to chisel a rail of such a hard texture that chips were liable to flow therefrom, which fact could have been known or was known by the defendant had defendant inspected said rail prior to said cutting."

This ground of alleged negligence is also wholly without support in the evidence.

"5. In subjecting the plaintiff to unnecessary, needless, and unreasonable dangers."

This generality is simply a conclusion and is without foundation in the evidence.

"6. In failing to warn plaintiff of the existence of of the danger that chips would fly from either said chisel or said rail."

The evidence shows nothing on this subject either way except that plaintiff had been instructed in his work and understood it.

"7. In using an improper and unsafe system of cutting said rail, when the same could have been accomplished by the exercise of reasonable care without any danger whatsoever to the plaintiff or his associates."

There is no evidence tending to support this last averment

and no facts from which any inference can be drawn in its support.

After plaintiff had introduced his testimony and rested, the defendant moved for a nonsuit on the ground, among others, that plaintiff had failed to prove defendant negligent in any respect alleged in his complaint. This motion should have been granted. The case, however, was tried on what seems to have been a ground of negligence not set forth in the complaint, viz., that defendant furnished plaintiff and the other workmen a chisel that was defective and in a bad condition.

It is shown in the evidence that on the day mentioned, while respondent was helping to cut a rail at Minidoka, Idaho, he was hit in the eye by a sliver or splinter from a chisel that was in bad condition and was defective. The salient facts, as shown by the record, are: That about noon of December 10, 1920, respondent was ordered to take away the tools with which the crew were working and obtain new ones from the car. The foreman selected the chisel in question in the presence of respondent, who, when testifying, described it as being ''poor, all split and battered on top.'' He further said, ''The chisel was bent over flowerlike where you hit it, and the edge was blunt.'' After the chisel had been selected, the respondent with others ''went to cutting the rail in two in order to install a switch.'' Respondent at the time was 29 years of age, had worked for appellant 2½ years, and before that for other railroad companies. He had often cut rails and had frequently been instructed how to do the work. He testified as to the manner in which the work of cutting rails was done. Just before he was hurt, he was using a hammer, and when injured was holding the rail, standing on it, ''somewhat directing the work of the young man who had hold of the hammer, and was hammering, and observing what he was doing, and a piece of something hit me in the head.''

It is claimed by appellant that an employee as a matter of law assumes the risk of an injury from a defective tool when it is in the class of what is known as a simple tool.

It is the duty of the employer to be reasonably prudent and careful in selecting and furnishing tools that are

reasonably safe and suitable for the work done with
them. In this jurisdiction it is held that such duty
applies when what are known as simple tools are furnished.

In *Russell* v. *Borden's Condensed Milk Co.*, 53 Utah, 457,
174 Pac. 633, the court quotes with approval from 3 Labatt's
Mast. & Serv. § 924a, as follows:

"It is submitted that, as has been indicated above, it is illogical
and unreasonable to say that the master is free from the obliga-
tion of using ordinary care merely because the appliance he fur-
nished is a simple tool, but the better view is that, the appliance
being a simple tool, and entirely understood by the servant, the
latter's obligations to his master and to himself are increased;
and cases involving injuries from simple tools furnish a broader
scope for the application of the various affirmative defenses which
are ordinarily available to the master."

"It will thus be observed," says the opinion, "that the use of
simple tools or appliances under certain circumstances simply en-
large the scope of the master's defense, but it does not necessarily
imply that the servant assumes the risk in all cases and under
all circumstances."

It is argued by appellant that under the evidence in this
case the risk of a defective chisel was assumed by the re-
spondent. As hereinbefore stated, the record discloses that
the respondent knew all about the defective condition of the
chisel. With full knowledge of its exact condition, which he
described with accuracy, he is presumed to have known,
realized, and appreciated the danger from using it as it was
used. He made no objection to the use of this defective and
worn-out chisel. He apparently understood, realized, and ap-
preciated that the battered and broken condition of the
chisel made it dangerous for all who worked with it or near
it. The risks ordinarily incident to the employment are as-
sumed by the employee, but he does not assume risks due to
the negligence of his employer unless he has knowledge of
the defect and is aware of and appreciates the danger arising
from it or unless the defect and dangers are so open and ob-
vious that an ordinarily prudent person would have
observed and appreciated them. *Bussee* v. *Murray M.*
*& L. S. Co.*, 45 Utah, 596, 147 Pac. 626; *Lukich* v.
*Utah Const. Co.*, 48 Utah, 452, 160 Pac. 270; *Toone* v. *O'Neill*,
40 Utah, 285, 121 Pac. 10; *Kuchenmeister* v. *Railroad*, 52

Utah, 126, 172 Pac. 725; *Golesh* v. *Utah Apex Min. Co.*, 49 Utah, 232, 162 Pac. 369; *Shepard* v. *Payne*, 60 Utah, 140, 206 Pac. 1098.

This case, however, is brought under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), and the rights of the plaintiff and the liabilities of defendant must be construed and interpreted according to       4 the decisions of the federal courts, which hold that—

"An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work; and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it." *Gila Valley G. & N. R. Co.* v. *Hall*, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521.

See, also, *Union Pacific R. R. Co.* v. *O'Brien*, 161 U. S. 451, 457, 16 Sup. Ct. 618, 40 L. Ed. 766; *Texas & Pac. Ry.* v. *Archibald*, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188; *Choctaw, Oklahoma, etc., R. R. Co.* v. *McDade*, 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 96; *Texas & Pac. Ry. Co.* v. *Swearingen,* 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382; *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475.

Counsel for respondent say that where an employee is injured as the result of the use of a tool the temper of which could be ascertained only by a proper inspection on the part of the master, and where under the facts and circumstances it is doubtful if the workman could, merely by looking at the tool, have anticipated that its use was dangerous, it is proper to submit the issue of such fact to the jury. This contention is supported by the numerous authorities cited by counsel;

but, as heretofore shown, the facts are not applicable to the proposition advanced. We have examined the cases relied upon by counsel as paralleling the one at bar, but in all of them the facts are such as to make them readily distinguishable from the instant case. No case has been cited, and we have found none, where a servant working with or near a fellow servant using a defective and worn chisel or other similar instrument, with full knowledge of its bad and dangerous condition, was not held, to have assumed the risk as a matter of law, except in states where the defense of assumption of risk is abolished by statute.

The undisputed facts in this case established the defense of assumed risk so clearly and so indubitably that in accordance with the decisions of both this court and the federal courts it was the duty of the trial court to so hold as a matter of law, and for that reason, if for no other, to grant the motion for nonsuit which was interposed by appellant.

Judgment is reversed, and a new trial granted. Appellant to recover costs.

THURMAN and CHERRY, JJ., concur.

GIDEON, J., concurs in the result.

FRICK, J., did not participate herein.